CITY OF ROCKLAND *vs.* JOHN W. ANDERSON.

Knox.    Opinion March 4, 1913.

*Consideration. Contract. Fraud. Municipal officers. Replevin. Repudiation of Contract. Right of Public Officers. Title.*

1. The city of Rockland owned the horse in question and had a right to sell the same on the conditions named in the contract to the defendant and the defendant would thereby obtain a good title thereto, if the transaction was without fraud.

2. The defendants agreement as to the care and treatment to be given the horse by him was a sufficient consideration for the sale.

3. If the defendant performed the conditions of the contract of sale, the city could not repudiate the same.

On report.   Judgment for defendant and return of property replevied; damages to be assessed at nisi prius.

This is an action of replevin to obtain possession of the horse called "Winona." This horse, prior to January 17, 1906, was the property of the city of Rockland, on which day the city, by its committee on city property, sold said horse to the defendant. The consideration being that said defendant should keep said horse during the rest of its life, give her  a good home, avoid overworking her and, when her usefulness is over, put her out of the way and bury her. The defendant pleaded title to said horse in himself. The case was reported upon the agreed statement to the Law Court for determination.

The case is stated in the opinion.

*Edward K. Gould,* for plaintiff.

*Arthur S. Littlefield,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

HALEY, J.   This is an action of replevin, brought to obtain possession of the horse called in the writ "Winona," and is before this court on report.

The defendant pleaded title in himself. Prior to the 17th day of January, 1906, the city of Rockland was the owner of a sick horse, presumably used by the city for municipal purposes. The horse was coughing and discharging from the nose. The board of mayor and aldermen discussed the question of disposing of her. The chairman of the committee on city property stated that she was not worth more than $20. The aldermen discussed chloroforming, and some one suggested that somebody might be found who would take her and give her a home. The committee on city property was instructed to look into the matter.

The defendant offered to give $20 for the horse, but the committee wished to make a contract fixing the manner of use and burial of the horse at her death, and made a contract in writing with the defendant to take the horse, keep her during the rest of her life, give her a good home, avoid overworking her, and, when her usefulness was over, to put her out of the way and bury her, and sold her to him upon those conditions, to which he agreed. On February 5th the city government approved and ratified the contract, and the defendant took the horse upon those terms. The defendant doctored the horse, and she improved to the extent that she could do the work of an old horse. This action was brought by another city government to obtain the horse.

The horse being the property of the city, could be sold by the city, and the purchaser obtain a good title, if the transaction was without fraud. There is nothing in the agreed statement to raise a suspicion of fraud. The city was the owner of what was apparently a worthless horse, probably grown so in the service of the city. It was a question of whether the city would go to the expense of feeding and doctoring her, or of putting her out of the way and burying her, or, by placing her where she would have a good home and be properly used, avoid expense. As public officers it was their duty to deal with the city's property as prudent men would deal with their own property. It is true that the city could have gotten $20 for her in her disabled condition; but an ordinary man, who had a horse that had grown old and disabled in his service, would not sell that horse for the paltry sum of $20, to be traded about and abused for the rest of her life. It would not be humane to do so, and the municipal officers had the right to treat the city's animals in

a humane manner. The defendant's agreement as to the care and the treatment to be given the horse by him was a sufficient consideration for the sale, in the condition in which the horse was turned over to him. The city and the defendant made the contract; the defendant took the horse by virtue of that contract and was bound by its terms, and, by giving the horse proper care and medical treatment, the amount of which does not appear in the case, got her so he could use her, and, after his expenditure for the horse's benefit, the city had no right to repudiate its contract, made in good faith, and a contract that the law would uphold if made between individuals. The title to the horse passed to the defendant when she was delivered to him under the agreement, and, according to the stipulation, the mandate should be,

> *Judgment for the defendant, and return*
> *of property replevied, damages to be*
> *assessed at nisi prius.*